525-0298-WC, Safeway Scaffolding, Safeway Services, LLC, Appellant by Christopher Drinkwine v. Illinois Workers' Compensation Comm'n et al., Jeffrey Michael Henderson, Appley by James Keefe, Jr. Counsel Drinkwine, you may proceed. Thank you, Your Honor. Your Honor, may it please the Court and good morning, Counsel, Chris Drinkwine on behalf of the employer, Safeway Scaffolding, Safeway Services, LLC. The Commission did not believe that petitioner ever intended to return to work. That finding allowed for the termination of temporary total disability benefits as well as the denial of maintenance and vocational rehabilitation benefits. This Court knows its standard of review. The Commission's finding that petitioner never intended to return to work must stand unless it's against the manifest way to the evidence, meaning that the opposite conclusion is clearly apparent because no rational trier of fact could have agreed with the Commission. Because it was supported by record facts and was based on a credibility determination, the Commission's finding that petitioner never intended to return to work was not against the manifest way to the evidence. And consequently, the Circuit Court's judgment must be reversed and the Commission's original April 29, 2021 decision must be reinstated. The Commission found that petitioner never intended to return to work based on factual findings and a determination that petitioner was not credible because he gave various reasons for not showing up for work on June 10, 2019, raising questions regarding his credibility. Was it because of the flood? Was it because of a non-existent driving restriction? Or was it because the job was a sham based on his situational experience? Petitioner did not explain adequately in his testimony before the arbitrator why he thought the job was a sham. There was no sitting restriction in place in June and no clinical reason he could not drive to work. And he had previously sought retraining and he testified that he applied for a different job on June 3, 2019. Moreover, the Commission did not believe that the petitioner's July 7th voicemail message was a sincere or genuine effort to return to work because it was an act entirely inconsistent with his testimony that the offered light-duty job was a sham. Based on these factual findings and its assessment of petitioner's credibility, the Commission determined that petitioner never intended to return to work. That determination permitted termination of TTD under the Preston and Gallantine cases as well as the denial of maintenance and vocational rehabilitation under the Euclid Beverage case. So, the Commission's original decision must be reinstated because these factual determinations and credibility determinations were not contrary to the manifest way to the evidence. But the most important aspect of this case due to the procedural posture that we're in is the recognition that a different interpretation of the evidence by the dissenting commissioner or the circuit court does not make the Commission Majority's interpretation against the manifest way to the evidence. As this court well knows, even if your honors were to agree with the dissenting commissioner or the circuit court, that does not mean that the Commission Majority's interpretation of the evidence was against its manifest way. And for reasons I'll explain, the dissenting commissioner and the circuit court were both incorrect, but that's inconsequential where reasonable minds could differ. An alternative interpretation of the evidence does not make the Commission Majority's conclusion that petitioner never intended to return to work against the manifest way to the evidence. And counsel, excuse me for interrupting, but maybe you're going to get into that as you look at those issues, but how should we view the failure of the employer to return that call, which I think you mentioned, is that July 7 was viewed as insincere? Yes, your honor, the commission made a specific finding that that wasn't a genuine, sincere effort to return to work. And the evidence shows and the commission found that by the time that the July 7th voicemail message was left, petitioner at that point had already failed to return to work as directed on June the 10th and his return to work status was in dispute. And that voicemail message was not returned on the advice of counsel. And what's important to remember about that is that on July 7th, the date of the voicemail message, the employer knew nothing of petitioner's purported four-hour commute due to the flood. As far as the employer knew on July 7th, 2019, he had just failed to report for light duty on June 10th because of an unfounded belief that the job was a sham. So petitioner had at least two opportunities to advise the employer that the reason he didn't show on June 10th was an inability to get there due to the flood. His counsel could have said so in his July 3rd email to the employer's counsel. He didn't. Instead, he said that the light duty job was a sham. And petitioner could have advised that he couldn't get there due to the flood when he left the message for Brandenburg on July 7th. He didn't. So as of July 7th, the voicemail message, the date of the voicemail message, the employer only knew that petitioner did not show for work on the 10th because he thought the job was a sham. And of course, the employer knew that the job was a bona fide light duty job. So that's the reason that the voicemail message wasn't, was not returned. Does it, how does the July 10 email from the employer's attorney saying, hey, there is light duty work. How does that figure in? Well, it figures right in because the commission found, specifically found that the email from respondent's counsel to petitioner's counsel on July 10th advised, the employer's counsel made clear that the light duty job was legitimate within the employer's, I'm sorry, the petitioner's restrictions and that it was available as of June 10th through July the 10th, the date of the email. And the commission made a specific, made a specific finding that there was a job offered and available. The commission wrote other than the one month travel limitation due to the flood, the record does not support petitioner's contentions that the respondent did not in fact have light duty work available within his restrictions in June or thereafter. Now the after the fact determination that petitioner couldn't get to work or couldn't get there within a reasonable time does not mean that the light duty job was not available. The employer was up and running and the job was available. When did the bridge reopened? The bridge reopened on the 9th of July, 2019. So, the dissenting commissioner believed that petitioner intended to return to work in July because he made multiple calls to Brandenburg about returning to light duty and believed that the majority ignored that it was respondent's counsel who instructed petitioner to contact Brandenburg and obtain return to work details. The dissenter stated that the employer believed it was justified in terminating petitioner because he was unable to start light duty on June 10th and that it really actually didn't want to bring petitioner back for light duty. The dissenter then concluded that given Brandenburg's failure to respond to the voicemail message after the flood receded, he would extend, the dissenting commissioner would extend the benefits through October 14, 2019. Some points about that are the record reveals that petitioner made just one call to Brandenburg and left one voicemail message. There was no evidence or finding that he made multiple calls. Second, the commission majority found that Brandenburg's testimony established that when the petitioner left the July 7th voicemail message, his return to work status was already in dispute and the call was not returned on the advice of counsel. So the availability of the job is a specific finding by the commission that's not against the manifest weight of the evidence as was its finding with respect to the intention of the plaintiff in leaving the voicemail message and the availability of the job. Most importantly though, it's the finding about the intent of the petitioner that it was never his intent to return to work and the commission gave good reasons for that and made its own credibility determination based on that. Someone else's credibility determination has no impact on that against the manifest weight of the evidence analysis. So the dissenting commissioner merely drew a different inference from the evidence than did the commission majority, but when different reasonable inferences can be drawn from the facts, the inference drawn by the commission majority must be accepted, whereas here it was not against the manifest weight of the evidence. The circuit court held that it was bound by the commission's factual determination that petitioner had a right to TTD benefits through July 8th, 2019 and found that the record was void of any job offer within petitioner's restrictions after June 6th, 2019. Therefore, according to the circuit court, the only conclusion one may reach is that both the arbitrator and the commission found the petitioner to be totally and temporarily incapacitated up to July 8th, 2019. Respectfully, that's not the only conclusion that may be reached. First of all, the petitioner's incapacitation is neither here nor there. The finding of the commission was that he never intended to return to work. He was obviously still incapacitated. He was being brought back for light duty. So, the circuit court not only failed to give the commission proper deference, its conclusions were incorrect because as I mentioned, there was a job offered and available. The commission specifically found that the record does not support the contention that respondent did not, in fact, have light duty work available within petitioner's restrictions in June or thereafter. And that same point was reflected in the email from Respondent's Counsel to Petitioner's Counsel on July 10th. Now, Safeway has stressed that ordering temporary total disability through July 8th does not make the commission's determination that petitioner never intended to return to work against the manifest weight of the evidence. Although the arbitrator's conclusion that petitioner never intended to return to work would appear to obviate the need to order TTD during that period, Safeway did not ask the commission to review the arbitrator's decision on that point. And as a result, the commission did not address it. And the finding that petitioner could not get to work to do the light duty job in that period due to the flood only means that petitioner could not have reported for light duty during that period if he intended to. It does not change the commission's finding that he never intended to return to work. So that period is actually gratuitous TTD that the employer didn't challenge. And if anything, that period of time ordering TTD was against the manifest weight of the to get to work for light duty during that period alter the commission's factual finding based on the evidence that petitioner's voicemail message expressing his interest in returning to work was insincere. So again, the circuit court had a different interpretation of the evidence than did the commission majority, an impermissible interpretation in the employer's view. But nonetheless, a different interpretation does not render the commission majority's interpretation of the evidence against its manifest weight. And for all those reasons, the employer Safeway Scaffolding respectfully requests that this court reverse the judgment entered by the circuit court on January 11th, 2022, and reinstate the commission's original April 20, 20, April 29, 2021 decision. That's all I have. Any questions from the bench? Thank you, counsel. You'll have time and reply. Mr. Keefe, you may respond. Thank you, Your Honor. And may it please the court. My name is Jim Keefe. I represent Mr. Henderson, Mr. Drinkwine. I hope Mr. Drinkwine was not stating that as of July 8th, July 9th, July 10th, 2019, or thereafter that the employer was asking or offering for my client to come back to work because that is not what is in the record. Justice Mullen, you referred to the email from July 10th of 2019. That email does not state we have this job available for Mr. Henderson. That email states, and consistent with the testimony and arbitration from Brandberg, that the return to work at that point was in dispute. So respondent or the employer was not providing work as of July 8th, 9th, 10th, 2019, or thereafter. And that's where the analysis needs to be. My client had a work-related lumbar spine condition that required restrictions that as of July 2019 had not stabilized. It's undisputed in the record that the employer not only did not bring him back in July of 2019, but never offered to bring him back since July 8th, 9th, or 10th, 2019. We don't dispute that on June 6th, there was the letter offering work to return on June 10th. We don't dispute that that's in the record. However, July 8th, 9th, and 10th, and thereafter, absolutely they did not offer or allow him to try and return to work. They said it was, quote, in dispute. So by that admission, or just by failing to tell him to come back to work in July or thereafter, proves that there was not a job to him or available to him after July 2019. So when the commission states, as Mr. Drinkwine cited, other than a one-month travel limitation due to a flood, the record does not support petitioner's contentions that respondent did not, in fact, have light-duty work available within his restrictions in June or thereafter. Or thereafter, that is factually incorrect, is what the commission wrote there. Because if you go up to the paragraph above, or two paragraphs above, I'm sorry, they referenced specifically Respondent's Counsel's email that says his return to work for a month after Respondent's offer were all in dispute. It wasn't, Mr. Unsell, tell Mr. Henderson to come back to work on X date. We have work within that restriction. Unequivocally, it says it's in dispute. So they didn't let him come back. So to prove TTD, we have to show that he had a work-related condition that had not stabilized, that precluded from doing his pre-accident job. In other words, he did not work, and he was unable to work, and we know he was unable to work because Respondent didn't have any work for him to return to as of July 2019. So this idea about the commission saying, well, he never intended to return to work, logic would dictate you can't return to a job that's not being offered, that does not actually exist. And that is what is in the record. It didn't exist because they said it was in dispute. And I don't think this case is all that different than the couple of claims, or the cases I cited to in my brief. One was Schaeffer, where the commission actually had denied TTD benefits. The court reversed, reasoning that no light-duty work had been offered, and just because he applied for unemployment when he was on restrictions does not preclude a finding of TTD. And then probably in the Otto case, that was one where the commission denied a period of TTD, but then awarded it when the petitioner offered to come back to work when he initially had refused, and the employer said, well, no, we don't have work for you anymore. And the court affirmed that award of TTD. So again, from June 6th, or June 10th, I guess, whatever the date was, up until July 8th, we don't dispute that there was an offer made. But after that point in July, they said it was in dispute, and they were not offering for him to come back to work. So you can't intend or return to a position that no longer exists. Didn't that email say, maybe I'm reading that wrong, but that light-duty was available as of June 10, and continued to be available to the present? No, we read that email as it was available back on June 10th, Your Honor, but they did not tell him to come back to work on July 10th in that email, because you'll remember, the initial return to work email from June told him to contact Ms. Brandmeier, right? And so he did not in June, I mean, we don't, obviously we agree to that, but he did contact Ms. Brandmeier in July. Ms. Brandmeier then contacted counsel. Counsel did not come back and say to Petitioner's counsel, Mr. Runcell, hey, this work is available, he needs to show up on X date, call Ms. Brandmeier again, instead he told Brandmeier not to even talk to Petitioner. That's when he said it was, quote, in dispute. So the job was not available, that's the very point. If the job was offered and available in July, then there would be something more in the record that says, hey, this guy's got to come back to work. Here's the job, here's the date. That was a lot different in July, that July email, than was sent in June saying, hey, show up on June 10th. So just that very equivocal, hey, this is in dispute, almost like it's a game. But there was not, Your Honor, and that's, that is, that's the very point. I hear what you're saying, it's equivocal. But to the extent it's equivocal, does it matter if, how the arbitrator and commission see it? Well, all they say is that there was work offered thereafter, but they didn't cite to a time where they say work was thereafter. They didn't say that on July 10th, 2019, Mr. Tommaso offered the light duty job and he should have returned. I mean, that's, that's just not the finding. I don't believe in the commission decision, especially when you read it in the context of, previously they told him to contact Brandmeier, that's what he did. And then the lawyer tells Brandmeier, well, don't contact him anymore. I, you know, it's, I think that the clear manifest way to the evidence is that as of July, 2019, this job didn't exist any longer. And because it doesn't exist any longer and he's got a work-related restriction and his condition is not stabilized, he gets the TTD. And then if you move forward to the date of MMI, I mean, we're kind of in the same position there. Without them providing a job within the restriction for an accepted work-related condition, then we get into the maintenance folk issue. So I think that's the critical determination here is that the evidence in this record is, it's clearly apparent that there was not a job made available to him in July of 2019. And again, you can't intend to return to something that's not there, that doesn't exist. I agree from June until July, it was very clear that the job was offered. Yet they excused it, the commission excused it because they must've believed that he couldn't have actually physically made it there. But after July, it's just, it's just not there. So we'd ask that the appellate court follow the circuit court's reversal of the initial commission decision and then follow it on remand back up and award those benefits. Any questions from the court, the bench? None? Okay. Thank you. You're welcome. Counsel Drinkwine, you may reply. Thank you, Your Honor. The commission did not believe that a petitioner ever intended to return to work. Not on June 10th, not at any time during the flood, not on June or July 7th when he left the voicemail message, and not thereafter. That finding was based on everything that occurred up until July 7th, 2019. The varying reasons he gave, couldn't decide if he wasn't coming to work because it was a sham or because of the flood or because of a driving restriction. And they made that finding because he was already looking for another job. Their credibility determination can't be overturned unless it's against the manifest way to the evidence. Or I guess in this case, has to be reinstated unless it's against the manifest way to the evidence and it's not. So Mr. Keith is actually focused, focusing the analysis on the wrong part because it actually doesn't matter if there was a job available after July 9th, 10th, 11th, 12th as he's postulating. There was, and the commission found that there was, and that finding is not against the manifest way to the evidence. But even if there wasn't, once they make the finding that he never intended to return to work and they do not believe that he was sincere in his, in his, I guess, one effort to return to work with the July 7th voicemail message. Once they make the finding that he did not have an intent to return to work, that they didn't believe that he had the intent to work, that's it. And while there was a job available that remained available and the record bears that out, it actually doesn't matter. That finding under the precedent in Gallantine cases allows for the termination of TTD when an employee has been offered a job within his restrictions and is, refuses, refuses to take it. That's the finding they made, flood or no flood, that he never intended to return to work then or in the future. And unless... Counsel, I, you know, I hear what you're saying, but if it was deemed important, is there anything in the record from the petitioners, if, as a response from the petitioner to that email saying, you know, there was a, there was a job and the job continued to be available? A response from the petitioner, Your Honor?  I guess I don't... After that email. Oh, after the July 10th email advising that there was a job available, was there another? Well, I guess it's, it's counsel, you know, for the petitioner sees it as equivocal and he disputes it. But either way, is there anything in the record by way of a response from the plaintiff to that, or excuse me, from the claimant? Excuse me. Not that I'm aware of, Your Honor. Thank you. In any event, it's the commission's statutory duty to assess the credibility of witnesses. It's their job to assess that credibility. It's not the job of the, of the Circuit Court of Madison County to assess the credibility of witnesses before the commission. And it's not even this court's job to do that, as Your Honors well know. Unless that credibility determination that petitioner never intended to return to work is against the manifest way to the evidence, the commission's original decision has to be reinstated. And it's the employer's, the employer would submit that the decision or the finding was not against the manifest way to the evidence because the opposite result is clearly, is not clearly apparent. And it cannot be said that no rational trier of fact would agree with the commission. And therefore, we'd ask this court to reverse the circuit court and reinstate the original decision. Any questions from the bench?  No? Okay. Well, thank you, counsel, both for your fine arguments on this matter this morning. You will be taken under advisement. A written disposition shall issue. At this time, the clerk of our court will escort you from our remote courtroom, and we'll return to content. Thank you. Happy holidays. Happy holidays to both of you. Thank you. Thank you, Your Honor.